CARDWELL (DOWELL v.). See Case No. 4,039.

## Case No. 2,396.

### CARDWELL v. REPUBLIC FIRE INS. CO.

[12 N. B. R. 253;[1] 7 Chi. Leg. News, 282.]

District Court, N. D. Illinois. 1875.

MARINE INSURANCE — FORFEITURE FOR NONPAYMENT OF PREMIUM NOTE — STRANDING OF VESSEL—PAYMENT OF NOTE — SUBSEQUENT LOSS OF VESSEL IN GALE.

1. Where a note is given for the premium on an insurance policy containing the provision that if the note is not paid at maturity the policy becomes void while it remains overdue and unpaid, and after the dishonor of the note the vessel insured strands, whereupon the master has the note paid, and afterwards a gale comes up and the vessel is lost, the insurer is not liable.

2. Though the weather was fair at the time of the stranding, and continued so until after the note was actually paid, yet the proximate cause of the loss was the stranding of the vessel, and under these facts the policy was not revived.

---

[1] [Reprinted from 12 N. B. R. 253, by permission.]

Waite & Clark, for creditor.

Tennys, Flower & Abercrombie, for defendant.

BLODGETT, District Judge. This is a motion to expunge a claim proved by Wm. P. Cardwell against the estate of the bankrupt. There is no dispute as to the material facts. The claimant was the owner of the schooner D. O. Dickinson, and a policy in his favor for the season 1869, for the sum of five thousand dollars, was issued by the bankrupt company on the hull, tackle, apparel, and furniture of said schooner, to expire on the 5th of December, 1869. The insured gave the company a note for the premium on this policy, payable on the 8th day of October, 1869, with a condition in the body of the note and also in the policy, in these words: "And in case this note is not paid at maturity the full amount of premium shall be considered as earned, and the said policy becomes void, while the note remains overdue and unpaid." The note was not paid when due, and on the night of the 7th of October said schooner, laden with a cargo of lumber, left the port of Oconto for the port of Chicago, and about two o'clock on the morning of the 8th she ran aground on what is known as Strawberry reef, a sandbar projecting from Chambers' island, near the outlet of Green bay. No serious damage was done to the schooner by the stranding. Her bows ran hard on to the sand, and although an anchor was at once carried out and efforts made by the crew to work her off, they were unable to move her, owing to the bad holding ground, which was a soft sandy or gravelly bottom. Finding that he could not get her off by his own efforts, the captain, who was the owner, with the most efficient part of his crew, took the yawl boat and proceeded to Menominee, about thirty miles distant, for a tug, where they arrived about eleven o'clock in the morning. From that point the owner telegraphed to his agent in Chicago to pay the premium note, and the same was paid at half-past eleven o'clock in the forenoon on the 8th of October, without any disclosure to the insurance company of the condition in which the vessel then was. The services of a tug were procured, and the captain, with the tug, returned to the schooner about five o'clock in the evening of the 8th. The captain of the tug found the water too shallow in the vicinity of the schooner to enable him to reach her with his lines and decided to go for a lighter, which he did, leaving the schooner still hard aground. During the 8th, and up to about four o'clock of the morning of the 9th, the weather was pleasant and with no sea running, and the vessel appeared to be in no immediate danger; but about four o'clock in the morning of the 9th a gale came on from the southwest, causing a heavy sea, which broke over the stern of the vessel and finally filled her with water, and before the gale subsided she was a total wreck.

The company refused to pay the insurance, and a suit at law was commenced, but before it could be tried the company was adjudged a bankrupt, and this claim for the amount of the policy and salvage services, in all five thousand five hundred and fourteen dollars and twelve cents, was proven up against the estate of the bankrupt, which the assignee now seeks to have expunged. The defense set up by the assignee is, that at the time the loss occurred the policy had become void by the non-payment of the premium note, and, therefore, the company was not liable. In Williams v. Albany City Ins. Co., 19 Mich. 451, this clause was construed to simply suspend the policy while the insurance remained unpaid. And if payment of the premium was made before expiration of the policy, it was revived and became again operative; but if the loss occurred during the interval in which the policy remained suspended, the company was not liable, therefor, on the policy. This construction of the intent and meaning of the contract seems to me sound, and was acquiesced in by the counsel on both sides in this case. The material question is, when did the loss occur within the spirit and meaning of the policy? Was it when the vessel stranded on the sandbar in comparatively mild weather, or when she was actually broken in pieces by the gale? Or, in other words, was the vessel lost within the meaning of the contract when the premium note was paid at half-past eleven o'clock on the forenoon of the 8th of October.

It seems to me that the proximate cause of the wreck of the vessel occurred when she stranded on this sandbar. From that time on she was beyond the control of her crew. She was no longer a vessel afloat and capable of being maneuvered by those in charge of her, but was a helpless and inert mass, incapable of performing the functions of a ship. True, she received no such immediate damage as necessarily involved her destruction, if good weather had continued and help had been obtained: but she was within the jaws of destruction with no power to help herself, and at the mercy of the elements; and when the gale came on it only completed the wreck which had begun with the stranding.

It is conceded by the counsel for the claimant that the policy was suspended and inoperative from the time the note fell due till paid, and, of course, if the loss is to date from the time when she struck on the bar, then the policy was inoperative at the time of the loss.

Claimant's counsel contend that the immediate cause of the loss of the vessel was the gale, which began on the morning of the 9th, insisting that the proof shows that the vessel was not considered in any danger, by her captain or crew, up to that time; and that the gale and not the stranding, on the morning of the 8th, is to be deemed the proximate cause of the wreck, but, as I have already intimated, I cannot agree with that view of the case. The proximate cause of the wreck, in my opinion, was the stranding, which held the vessel helpless while the gale beat her in pieces. But for the stranding she would have been far beyond that place, and probably at or near the end of her voyage, before this gale came on.

The cases cited from 12 Wall. [79 U. S.] 194 [Howard Fire Ins. Co. v. Norwich & N. Y. Transp. Co.]; 11 Johns. 13; 12 East, 646; 2 Biss. [Case No. 14,345], as to what was the proximate cause of loss in those cases, respectively, do not seem to me in point. The case from 12 Wall. [79 U. S.] (Howard Fire Ins. Co. v. Transp. Co.), which seems at first glance the most analogous, was that of a fire risk on the hull of a steamer. A collision occurred by which the steamer was injured so as to let in the water, and owing to the influx of the water she took fire and her upper works burned off so that the rest of the hull sank. It was found, as a fact in the case, that but for the fire, which destroyed the buoyant parts of the hull, she would have floated, notwithstanding the injury from the collision, and the court, therefore, held that the fire was the proximate cause of the loss as against the fire insurance company. So in the case of The Union [Case No. 14,345]. The learned judge held that the proximate cause of injury to the libellant was his own negligence in attempting to leap from the tug, and not a collision which had occurred some moments before.

The claim must be expunged.